(January 8, 1987)

■ David C. Walentas, Appellant-Respondent, v Stephen
Johnes et al., Respondents-Appellants.—Order of the Supreme
Court, New York County (Bruce McM. Wright, J.), entered
June 5, 1985, which (1) granted defendants' motion for an
order dismissing the action bearing index number 25139/84,
(2) denied defendants' motion for an order granting summary
judgment on the first counterclaim in the action bearing index
number 7600/84, (3) granted plaintiff's cross motion for sum-
mary judgment in the action bearing index number 7600/84
to the extent of referring the issue of the amount of rent due
to a Special Referee, (4) granted defendants' motion to consoli-
date the action bearing index number 25139/84 with the
action bearing index number 7600/84, and then, *sua sponte,*
severed the two actions, and (5) enjoined plaintiff from com-
mencing any other actions against defendants on theories and
grounds already rejected by the courts, is modified, on the law
and the facts and in the exercise of discretion, to the extent of
(1) granting defendants' motion for summary judgment on the
first counterclaim in the action bearing index number 7600/84
and declaring that defendant Carl Johnes is the tenant of
apartment 5C, 180 West 58th Street, New York, New York,
within the meaning of the rent control law, (2) denying
defendants' motion to consolidate, and (3) vacating the injunc-
tion against the bringing of further actions by plaintiff against
defendants, and otherwise affirmed, without costs and without
disbursements.

In May 1971, defendant Stephen Johnes leased a rent-con-
trolled apartment from plaintiff's predecessor in interest.
However, he never took occupancy. Instead, shortly after the
lease was executed, in or about June 1971, Stephen's brother,
defendant Carl Johnes, moved into the apartment after ob-
taining the then landlord's consent in writing to do so "during
your brother Stephen's absence from the City" upon the
condition that he, Carl, pay the rent. For the next 10 years,
Carl lived in the apartment, paying the monthly rent in his
own name, not only to plaintiff's predecessor, but also to
plaintiff himself (herein, the landlord) for nearly two years
after the latter purchased the building in 1979.

Shortly after purchasing the building, the landlord proposed

a plan for cooperative conversion, which he served on Carl. However, in late 1980 or early 1981, he began rejecting Carl's rent checks. He followed up by instituting a nonpayment proceeding against Stephen, which, for reasons not indicated in the record, was discontinued, and then, in October 1981, by instituting a holdover proceeding against both Stephen and Carl, which, according to their attorney, was dismissed because the notice to cure was defective.

In April 1982, the landlord served a 10-day notice to cure addressed to both Stephen and Carl at the apartment, accusing them of violating the tenancy by "[p]ermitt[ing] persons other than the tenant or the tenant's immediate family to use or occupy the premises". The notice further advised that the apartment was subject to the New York City Emergency Housing Rent Control Law, and that it was being served pursuant to New York City Rent and Eviction Regulations §§ 52 and 53, under which a 10-day notice to cure is generally required as a condition to commencing eviction proceedings against a tenant. Carl responded by commencing a declaratory judgment action as to his right to have a roommate live with him in the apartment (herein, the *Yellowstone* action). This matter was adjudicated on the merits, the court deciding that since the landlord and his predecessors had known about the roommate "for a long period of time", the right to object thereto, if any, had been waived, and that Carl consequently had the right to have a roommate live in the apartment.

In February 1984, the landlord commenced an action against Stephen and Carl in Supreme Court to recover rent arrears dating back to December 1980 (herein, the rent action). Answering the complaint, Stephen and Carl asserted various defenses, including one alleging that the landlord had refused Carl's tenders of rent since January 1981, and another alleging a breach of the warranty of habitability. In addition, Carl interposed several counterclaims, all predicated on the allegation that the various legal proceedings the landlord had instituted against him were without merit in that they were "all based on the allegation that [Carl] is not the tenant of the apartment". Believing himself to be a victim of "harrassment-through-litigation", Carl's first counterclaim seeks "a declaratory judgment that he is a rent controlled tenant of subject apartment, and a permanent injunction against plaintiff from bringing any more legal actions or serving any more legal notices premised upon his not being the tenant of the apartment." Factually, the first counterclaim alleges Carl's occupancy of the apartment since June 1971; the landlord's knowl-

edge thereof at all relevant times; Carl's continuous payment of rent and its acceptance for a long period of time by the landlord and his predecessor; the service of notices upon Carl as though he were the tenant entitled thereto; the decision in the *Yellowstone* action; the landlord's "verbal" harassment of Carl on "many occasions"; and Carl's participation in an active and successful tenant's association.

In November 1984, after the rent action was placed on the calendar, the landlord commenced another action against Stephen and Carl in Supreme Court, this time for a judgment awarding him possession of the apartment on the ground that it is not occupied by Stephen as his primary residence (herein, the nonprimary residence action).

Carl and Stephen, appearing together through the same attorney, moved for an order dismissing the nonprimary residence action on the grounds of the pendency of Carl's first counterclaim in the rent action (invoking CPLR 3211 [a] [4]), lack of jurisdiction (invoking CPLR 3211 [a] [8]), and lack of merit (invoking CPLR 3211 [c]). Alternatively, they moved for an order consolidating the nonprimary residence action with the rent action. Simultaneously, they moved in the rent action for an order granting them summary judgment on Carl's first counterclaim on the ground that the decision in the *Yellowstone* action was res judicata on the question of Carl's status as a rent-controlled tenant. The landlord cross-moved in the rent action for summary judgment in the amount of $24,848.55, this being the amount of rent allegedly unpaid since December 1981, computed on a basis not exceeding the maximum rent due under the rent control law.

Special Term found that the written consent the then landlord gave Carl in June 1971 to reside in the apartment during Stephen's absence from the city made Carl "the proper occupant of the apartment"; that "[a]bsent nullification of that agreement, the plaintiff is impotent to urge any primary residence violation as a basis for ousting either Stephen Johnes (regarded by plaintiff as the only legal tenant), or Carl Johnes, the present occupant"; and that until such agreement is "set aside, the plaintiff should be enjoined from commencing further actions against Carl Johnes to oust him from the apartment." Notwithstanding that Carl was found to be "the proper occupant", Special Term, finding that the decision in the *Yellowstone* action was not res judicata as to Carl's status as a tenant under the rent control law, refused to declare that Carl enjoys such status and denied Carl's motion for summary judgment on his counterclaim in the rent action. With respect

to the landlord's cross motion for summary judgment in the rent action, Special Term commented that "[t]he plaintiff in rejecting proffered payments, has created the false necessity for his complaint", but held that "[o]bviously, some rent is due, if none has been paid since 1981", and that "to deny recovery of rent from an apartment occupant would be tantamount to a taking of property without due process." Special Term's order dismissed the nonprimary residence action pursuant to CPLR 3211 (c); denied Carl's motion for summary judgment on his first counterclaim in the rent action; enjoined plaintiff from "commencing any other actions against defendants on theories and grounds already found to be rejected by the Courts"; granted the landlord's cross motion for summary judgment in the rent action "to the extent of referring the application to Trial Term, Part 10, for assignment to a special referee to hear and compute the precise amount of rent currently due and owing"; held entry of judgment for the rent arrears in abeyance pending the return of the Referee's report; and consolidated the nonprimary residence action with, and then, in a subsequent decretal paragraph, severed it from, the rent action.

We note first that there is an overlap, or at least a very close relationship, between Carl's counterclaim and the landlord's nonprimary residence action. The latter seeks possession of the apartment on the ground that Stephen is not using it as his primary residence. The assumption, of course, is that Stephen, not Carl, is the tenant. This assumption is put into controversy by Carl's first counterclaim in the rent action for a declaration of his status under the rent control law. If Carl is a tenant entitled to the protection of the rent control law, the issue raised in the landlord's action as to whether the apartment is occupied by Stephen as his primary residence would be rendered irrelevant. It follows that Carl's counterclaim should be addressed first.

Strong policy considerations favor finality in the resolution of disputes to assure that parties are not vexed by repetitious litigation (*Matter of Reilly v Reid,* 45 NY2d 24, 28). These policy considerations are implemented in part through the doctrine of res judicata extending the bar of a former judgment not only to matters actually litigated but also to matters that might have been litigated but were not. "[T]he estoppel of a former judgment extends to all matters 'comprehended and involved in the thing expressly stated and decided, whether they were or were not actually litigated or considered [citations omitted]. It is not necessary to the conclusiveness of a

former judgment that issue should have been taken on the precise point controverted in the second action. Whatever is necessarily implied in the former decision, is for the purpose of the estoppel deemed to have been actually decided' ". *(Statter v Statter,* 2 NY2d 668, 672, quoting *Pray v Hegeman,* 98 NY 351, 358.)

Thus, the inquiry on Carl's motion for summary judgment on the ground of res judicata was whether the issue raised in his first counterclaim in the rent action was necessarily involved and determined in the *Yellowstone* action. The subject of Carl's counterclaim is, of course, his status as a rent-controlled tenant. The subject of the *Yellowstone* action was Carl's right to have a roommate in the apartment. Although the pleadings in the *Yellowstone* action are not in the record, it appears from the court's decision that Carl's status as a rent-controlled tenant was assumed by all involved therein, particularly the court. This assumption need not have been indulged in and could have been contested by the landlord if unwarranted. If it was the landlord's position—and there is nothing in the record to indicate that it was—that Stephen was the tenant, and that the notice to cure was served on Carl as well as Stephen not because Carl was the tenant or a cotenant, but only because it was thought appropriate and fair to give notice of the proceeding to the actual occupant of the apartment as well as to the so-called "tenant of record", the landlord could have moved to dismiss the *Yellowstone* action on the ground that Carl was not a tenant of the apartment with any rights under the lease that could be declared. Instead, the landlord joined issue in the *Yellowstone* action, and the matter was adjudicated on the assumption that Carl was the tenant. By subsequently bringing the nonprimary residence action, the landlord would now have it that Stephen is the tenant.

We hold that the decision in the *Yellowstone* action established the existence of a valid and subsisting landlord-tenant relationship between the landlord and Carl. The validity of this tenancy was " 'comprehended and involved in the thing * * * decided' "; it was " 'necessarily implied in the former decision' " *(Statter v Statter, supra,* at p 672). This is true despite the fact that no controversy surrounded the issue of Carl's status as a rent-controlled tenant in the *Yellowstone* action *(supra),* and that such status was found apparently on the basis of an admission contained in the landlord's notice to cure, or perhaps in his answer. Were we to now hold that Carl is not a protected tenant under the rent control law, and

entertain the landlord's nonprimary residence action naming both Carl and Stephen, but really brought only against Stephen, the right that Carl established in the *Yellowstone* action to have a roommate in the apartment would be completely undermined. The very basis of that adjudication was the fact of Carl's tenancy; it was upon that foundation fact that a concomitant right to have a roommate was declared to exist.

Special Term's consolidation and subsequent severance of the rent and nonprimary residence actions was unnecessary. The injunction that it issued against the landlord commencing any new legal proceedings against Carl was not responsive to the motions that were before it, and is accordingly vacated. Concerning the granting of the landlord's cross motion for summary judgment on its cause of action for rent arrears, we note defendants' cross appeal therefrom, and the contention in their preargument statement that referral to a Special Referee was "unnecessary and improper" before trial; however, as the point is not addressed in their brief, we decline to review it. Concur—Murphy, P. J., Kassal, Ellerin and Wallach, JJ.